## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARCO A. RAMOS SR., ISIDRA GARCIA RAMOS, MARCO A. RAMOS JR., ERIKA IBARRA RAMOS, HECTOR RAMOS, EVELYN RAMOS, SARAI RAMOS, RAMON GARCIA, and ROSA SAMANIEGO GARCIA,  )))))))  Plaintiffs,  )  )  v.  )  )  TOWN OF CICERO, MATTHEW RAMIREZ STAR #386, LOUIS DRAKULICH STAR #389, VINCENT ACEVEZ STAR #395, and FRANK KANE STAR # 282,  ))))))  Defendants.  ) | No. 04 C 2502 |

### MEMORANDUM OPINION

Before the court is defendants' joint motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons explained below, the motion is granted in part and denied in part.

### BACKGROUND

This is a § 1983 civil rights action against the Town of Cicero, Illinois, and four Cicero police officers, Matthew Ramirez, Louis Drakulich, Vincent Acevez, and Frank Kane.[1]  The action arises out of an incident occurring at plaintiffs' home.  The facts

---

[1] On October 6, 2004, we granted plaintiffs' oral motion to voluntarily dismiss defendant Ricky Ramirez.

as alleged in the complaint, which are taken as true for purposes of this motion, are as follows.

On April 17, 2003, at approximately 10:00 p.m., the nine plaintiffs, Marco A. Ramos Sr., Isidra Garcia Ramos, Marco A. Ramos Jr., Erika Ibarra Ramos, Hector Ramos, Evelyn Ramos, Sarai Ramos, Ramon Garcia, and Rosa Samaniego Garcia,[2] were all at home in their second-floor apartment in Cicero. They heard loud knocking at the rear entrance to the apartment and the voices of persons saying that they were police. Isidra believed that the persons at the door were friends who were joking around and told them to go to the front door (on the first floor), which was locked at the time.

Kane entered the front door by "overcoming" it and proceeded up the stairs to the second-floor apartment door along with the other police officers. (Second Amended Complaint, ¶ 11.) That door was closed but unlocked. Kane opened the door, and defendants entered the apartment without a valid search warrant or announcing their offices or requesting permission to enter.

Kane "rushed toward" Hector and searched him, then immediately handcuffed him and told him that he was under arrest. (Id., ¶ 13.) Kane took Hector out of the apartment and onto the second-floor

---

[2]/ When referring to the plaintiffs individually, we will use their first names to avoid confusion. Apparently, Marco Sr. and Isidra are married, Hector is one of their sons, and another son is Marco Jr., who is married to Erika. Ramon is Isidra's brother. The other familial relationships are unclear from the complaint.
  Erika's name is spelled both "Erika" and "Erica" in the complaint; we will use the spelling that appears in the case caption.

landing just outside the apartment, leaving the apartment door open. Kane then threatened to kill Hector "if he remained in Cicero" and shoved and punched him in the head, chest, and stomach. (Id., ¶ 14.)

After Marco Sr. complained that the police should not be hitting his son, Drakulich and Acevez began to punch him in the head and chest "in the presence of the entire Ramos family." (Id., ¶ 15.) Ramon voiced a similar complaint, and Ramirez punched him and told him to shut up. When Isidra also objected to the officers' actions, Acevez "slammed" her (evidently into the wall), and another officer who used his baton shoved her into the wall again. (Id., ¶ 17.) Evelyn complained as well, and was struck repeatedly by Acevez. Sarai, who was nine years old at the time, and Rosa "were inside the apartment, witnessed the incident, were threatened, and suffered severe emotional distress as a result." (Id., ¶ 21.) Defendants would not allow any of the plaintiffs to leave the apartment.

Marco Jr. and his wife Erika, who were sleeping in a bedroom, were awakened by the noise, came out of the bedroom, "and witnessed the battery of their family members." (Id., ¶ 19.) After the defendants handcuffed certain plaintiffs, defendants "ransacked the family's home apparently in search of some contraband." (Id., ¶ 20.) They took Marco Jr. into his bedroom, "surrounded him and threatened him with a beating if he did not sign a document that

purported to be Marco Ramos Jr.'s permission to enter and search the family's home." (Id.) After later being released from police custody, Marco Jr. discovered that his and Erika's jewelry was missing.

The defendants handcuffed and arrested Marco Sr., Isidra, Marco Jr., Erika, Hector, Evelyn, and Ramon. They also filed false criminal complaints against Marco Sr., Isidra, Hector, Evelyn, and Ramon. (Kane charged Marco Sr. and Isidra with battery; Ramirez charged Evelyn with battery; and Drakulich charged Ramon with battery.)[3] At their trials, Evelyn and Ramon were found not guilty pursuant to a directed verdict after the state rested its case-in-chief, and Marco Sr. and Isidra were found not guilty after a full trial. No plaintiff was found guilty of any criminal conduct. Plaintiffs allege that they suffered the loss of liberty, physical and mental pain and anguish, and financial loss.

Plaintiffs filed their initial complaint on April 7, 2004 and since have filed two amended complaints. The Second Amended Complaint alleges the following claims: a § 1983 Monell claim by all plaintiffs against the Town (Count I); a § 1983 excessive force claim by Marco Sr., Isidra, Hector, Evelyn, and Ramon against the individual defendants (Count II); a § 1983 false arrest claim by all plaintiffs against the individual defendants (Count III); a

---

[3] The complaint does not allege who filed the complaint against Hector or what was the charge against him.

malicious prosecution claim by Marco Sr., Isidra, Hector, Evelyn, and Ramon against the individual defendants (Count IV); a battery claim by Marco Sr., Isidra, Hector, Evelyn, and Ramon against the individual defendants (Count V); an assault claim by Marco Jr. against defendant Kane (Count VI); an intentional infliction of emotional distress claim by all plaintiffs against the individual defendants (Count VII); a <u>respondeat</u> <u>superior</u> claim by all plaintiffs against the Town (Count XI); and an indemnification claim by all plaintiffs against the Town (Count XII). (There are no claims labeled Counts VIII, IX, or X asserted in the Second Amended Complaint; the counts skip from Count VII to Count XI, and no pages appear to be missing.) Plaintiffs seek compensatory and punitive damages, attorney's fees, and costs.

Defendants now move to dismiss portions of the Second Amended Complaint.

## **DISCUSSION**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal is

appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

We will address each of defendants' arguments in turn, except for the argument regarding official capacity that was withdrawn in defendants' reply.

**A. Intra-Corporate Conspiracy/
Joint and Several Liability**

Within their claim for intentional infliction of emotional distress ("IIED") in Count VII, plaintiffs allege: "The defendants acted in concert with a common purpose and contributed to the same indivisible injuries sustained by plaintiffs." (Second Amended Complaint, ¶ 61.) Defendants contend that "[t]o the extent that this allegation constitutes one of a Conspiracy involving two or more Cicero Officers, including the named Defendant Officers, the claim is barred by the Intra-corporate Conspiracy Doctrine. Furthermore, to the extent that the Plaintiffs seek to attach joint liability to their claims . . ., such prayers for relief are likewise barred by the doctrine." (Motion, ¶ 2.) Defendants argue in their reply that plaintiffs do not plead "the sufficient predicate for joint liability" and that "[p]laintiffs' repeated prayer for joint and several liability throughout the Second

Amended Complaint warrants dismissal of the complaint." (Reply, ¶ 2.)

Plaintiffs respond that they are not alleging a conspiracy, and we do not believe that the allegation, read in its context within the IIED claim, can fairly be read as an attempt to state a conspiracy claim. In any event, the weight of authority in this district has rejected the application of the intra-corporate conspiracy doctrine in cases involving allegations of police misconduct. See Hobley v. Burge, No. 03 C 3678, 2004 WL 1243929, at *11 (N.D. Ill. June 3, 2004) (citing cases).

As for joint and several liability, defendants' argument that we should dismiss the entire complaint because there is no basis for imposing joint and several liability is without merit. The concept of joint and several liability is a theory of recovery; plaintiffs have not failed to state any particular claims because they rely on this theory. A demand for judgment is not considered part of a claim. See Bontkowski v. Smith, 305 F.3d 757, 762 (7th Cir. 2002). Even if the imposition of joint and several liability would be improper (which we do not decide at this juncture), the selection of an improper remedy, or even no selection at all, does not warrant dismissal under Rule 12(b)(6) if the statement of the claim indicates that the pleader may be entitled to relief of some other kind, which is the case here. See 5 Charles Alan Wright &

Arthur R. Miller, Federal Practice and Procedure § 1255 (2d ed. 1990)).

**B.    Monell Claim (Count I)**

Count I is a Monell claim against the Town.  Defendants maintain that Count I should be dismissed because plaintiffs have pleaded only "conclusory allegations" of a muncipal policy or custom on the Town's part.

To state a Monell claim, plaintiffs must allege either "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) . . . that the constitutional injury was caused by a person with final policymaking authority." McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995) (internal quotation marks omitted).

Plaintiffs assert the second type of Monell claim, the existence of widespread, permanent practices that constitute customs or policies of the Town's police.  They allege that the Town had customs of failing to do the following: properly investigate and maintain records of allegations of police misconduct; properly discipline officers; and properly train, monitor, control, and/or supervise officers.  Plaintiffs also

allege that the Town permitted a "code of silence" regarding police misconduct. These are sufficient allegations to withstand a motion to dismiss. See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993) (rejecting a heightened pleading standard for constitutional claims against municipalities); McCormick v. City of Chicago, 230 F.3d 319, 323-25 (7th Cir. 2000) (same). While the allegations against the Town come close to the level of "boilerplate vagueness," see Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 480 (7th Cir. 1997), Leatherman does not require more from plaintiffs at this point.

**C.  Excessive Force (Count II)**

Defendants argue that Count II of the Second Amended Complaint "fails to state claims against all the Defendants by all the Plaintiffs." (Motion, ¶ 4.) In defendants' view, only the specific factual allegations of one particular defendant striking one particular plaintiff (for example, "Ramirez punched plaintiff Ramon Garcia") state claims upon which relief can be granted and Count II "should be limited to only those claims." (Id.)

We disagree. Count II alleges that by their actions, the individual defendants "used and caused to be used unjustified force against Plaintiffs and/or failed to intervene to prevent the unjustified use of force by their co-defendants." (Second Amended Complaint, ¶ 40.) Thus, in addition to the allegations of force,

plaintiffs allege that the other officers present (there are only four individual defendants) failed to intervene to prevent that use of force. The case cited by defendants in support of their argument, Fillmore v. Page, 358 F.3d 496 (7th Cir. 2004), is inapposite; that case involved not a motion to dismiss but a summary judgment motion and thus went to the evidence, and the court found that there was no violation at all of the plaintiff's constitutional rights.

Moreover, defendants' contention that Count II does not provide them with fair notice of the claims against them is without merit. Alleging that the defendants failed to intervene to prevent another particular defendant from using excessive force is enough to state a claim; plaintiffs do not have to provide "a particularized idea of what it is that each Plaintiff claims each Defendant Officer did or did not do," as defendants maintain. (Motion, ¶ 5.) Under the liberal federal system of notice pleading, plaintiffs are not obliged to allege every action that they claim constituted a violation of their rights. See generally Cook v. Winfrey, 141 F.3d 322, 331 (7th Cir. 1998). It is clear that plaintiffs might be able to prove a set of facts consistent with the complaint that would entitle them to relief. Defendants may be able to disprove some of the allegations, but, of course, that is not the appropriate analysis on a motion to dismiss.

D.  **Fourth Amendment Claim (Count III)**

Defendants contend that plaintiffs Sarai Ramos and Rosa Samaniego Garcia have failed to state a Fourth Amendment claim against the defendants because all that is alleged by those plaintiffs is that they "were inside the apartment, witnessed the incident, were threatened, and suffered severe emotional distress as a result" and that "the defendants would not allow any of the plaintiffs to leave the apartment while the police were present." (Second Amended Complaint, ¶¶ 21-22.)  Defendants cite a single case, Ford v. Wilson, 90 F.3d 245 (7th Cir. 1996), in support of their argument that the alleged facts "only establish a de minimis temporary detention" that is not actionable under § 1983. (Motion, ¶ 6.)  Ford is distinguishable, though, because it involved a traffic stop, not a purported entry into a private home and subsequent detention.  The two scenarios are not "indistinguishable," as defendants assert.  Defendants cite no cases for the proposition that the facts alleged here are de minimis deprivations of liberty; therefore, the motion to dismiss Count III as to plaintiffs Sarai and Rosa will be denied.

**E.     Intentional Infliction of Emotional Distress (Count VII)**

Defendants also argue that plaintiffs Sarai and Rosa have failed to state IIED claims because the facts alleged as to those plaintiffs (they saw the incident, "were threatened," and were not allowed to leave the apartment) do not establish the required "extreme or outrageous behavior" for an IIED claim.

We would agree with defendants, were it not for the allegation that Sarai and Rosa "were threatened." Regarding the "outrageousness" component of an IIED claim, the Illinois Supreme Court has stated: "The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment. Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out then when made by someone in a comparatively weak position." McGrath v. Fahey, 533 N.E.2d 806, 810 (Ill. 1988). Given these principles, the facts as alleged--the entry into the apartment and the claimed threats by police officers (against a nine-year-old), coupled with the detention--would be sufficient to state IIED claims. We also are mindful that at this stage, plaintiffs are not obliged to allege every action that they claim inflicted emotional distress, see Cook, 141 F.3d at 331, and plaintiffs receive the benefit of imagination, as long as the hypotheses are consistent with the complaint, see Sanjuan v. American Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994).

The problem with the phrase "were threatened," however, is its vagueness. First, we cannot tell from the wording whether Sarai and Rosa allege that they merely <u>felt</u> threatened or whether an

officer threatened them. If it is the latter, the complaint must allege the content of the threat and which defendant or defendants issued the threat. Accordingly, Count VII will be dismissed without prejudice as to plaintiffs Sarai and Rosa. Because the IIED claim is the only state-law claim alleged by plaintiffs Sarai and Rosa, the respondeat superior claim against the Town alleged by those plaintiffs in Count XI will also be dismissed as to those plaintiff without prejudice.[4] Leave to amend Count VII (and to re-allege Count XI) will be granted as to Sarai and Rosa, if they wish, to more specifically set forth the circumstances of the alleged threats.

One additional note as to Sarai's claims: she is a minor, and defendants argue that all of the claims she brings should be dismissed because she lacks the capacity to sue. Plaintiffs concede that Sarai's claims must be brought by her parents and request leave to amend the complaint to do so. That motion is granted.

**F.   Malicious Prosecution (Count IV)**

Count IV is brought by plaintiffs Marco Sr., Isidra, Hector, Evelyn, and Ramon. Defendants complain that "the facts pleaded in the complaint clearly establish that there was only one complainant for each Plaintiff charged" and that the claim against Acevez

---

[4] Respondeat superior liability would apply to the state-law claims only, not the § 1983 claims. See Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978).

should be dismissed because "he is not alleged to have sworn out any complaints against any Plaintiff and there is no allegation that he participated in any prosecution as a complaining witness." (Reply, ¶ 10; Motion, ¶ 10.)

The five aforementioned plaintiffs allege that they were "subjected to judicial proceedings" without probable cause and that "defendants instituted and continued these proceedings maliciously." (Second Amended Complaint, ¶¶ 45-46.) Furthermore, they allege that the proceedings were terminated in their favor. (Id., ¶ 47.) Those allegations are the elements of a malicious prosecution claim. See Joiner v. Benton Cmty. Bank, 411 N.E.2d 229, 232 (Ill. 1980) (reciting elements of a malicious prosecution claim under Illinois law). Defendants' argument would be well taken if we were operating under a fact-pleading system. We are not. Again, under the liberal federal notice pleading system, plaintiffs can plead conclusions. That the complaint specifies who filed each complaint against each plaintiff does not necessarily foreclose a claim by that particular plaintiff against another defendant, and the lack of any specific detail regarding defendant Acevez does not render it clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

**G.**   **Battery and Assault (Counts V & VI)**

Defendants maintain that Counts V and VI must be dismissed because the individual defendants are entitled to what they deem "public official immunity" as set forth in the Illinois Tort Immunity Act, 745 ILCS 10/2-201. The statute provides:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. In defendants' view, they have immunity because "a police officer's decision to use force, whether it be to grab or handcuff or shoot a person, is uniquely the application of governmental policy through the exercise of discretion." (Motion, ¶ 11.) This argument, however, neglects one of the explicit requirements for immunity to attach: the <u>determination</u> of policy. "Under § 2-201, a public employee is immune from liability only if he both determines policy and exercises discretion." <u>Torres v. City of Chicago</u>, 123 F. Supp. 2d 1130, 1133 (N.D. Ill. 2000) (citing <u>Harinek v. 161 N. Clark St. Ltd. P'ship</u>, 692 N.E.2d 1177, 1181 (Ill. 1998) ("According to the statute, an employee may be granted immunity if he holds <u>either</u> a position involving the determination of policy <u>or</u> a position involving the exercise of discretion. The statute is equally clear, however, that immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy <u>and</u> in

exercising discretion.")). Defendants contend that they were exercising discretion, but not that they were determining policy. (Nor would that contention succeed.) Accordingly, defendants' argument regarding Counts V and VI is rejected.

## CONCLUSION

Defendants' joint motion to dismiss portions of the Second Amended Complaint is granted in part and denied in part. The motion is denied as to Counts I, II, III, IV, V, and VI. The motion is granted as to the claims of plaintiffs Sarai Ramos and Rosa Samaniego Garcia in Counts VII and XI, and those claims are dismissed without prejudice. Plaintiffs are given leave to file a Third Amended Complaint by August 29, 2005, to cure the defects in Count VII and to re-allege Count XI as to Sarai and Rosa and to specify that the claims of Sarai Ramos are being brought on her behalf by her parents.

DATE: July 28, 2005

ENTER: _____
John F. Grady, United States District Judge